IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

ECCLESIASTICAL DENZEL WASHINGTON, )
Register No. 990079, )
 )
                Plaintiff, )
 )
      v. )      No. 08-4092-CV-C-NKL
 )
MATT BLUNT, et al., )
 )
                Defendants. )

**REPORT AND RECOMMENDATION**

      Plaintiff Ecclesiastical Denzel Washington filed suit on May 5, 2008, pursuant to 42 U.S.C. § 1983. He alleges his constitutional rights were violated when defendants knew he was asthmatic and housed him in an area where he was exposed to unreasonable levels of environmental tobacco smoke (ETS). He further claims his rights were and continue to be violated because prison officials allow inmates to purchase smoking supplies from the canteen and to possess them within their cells and in the prison environment. The parties filed cross-motions for summary judgment, which are now fully submitted.[1]

      Federal Rule of Civil Procedure 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

      Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and

---

[1]This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

The parties agree that plaintiff has asthma, requires and receives daily prescription medication, and is or has been assigned to housing units where cigarette smoking has occurred. At times, plaintiff has had nonsmoking cell mates, and at other times, he has had smoking cell mates.

The Missouri Department of Corrections has a policy prohibiting inmates from smoking in the living areas. Inmates are permitted to purchase cigarettes, however, and keep them in their cells. While conduct violations are sometimes written for inmates who are caught smoking in the cells, not every inmate is caught every time he smokes.

Plaintiff states that the rule prohibiting smoking in the housing unit is not properly enforced by all of the corrections officers. In contrast, defendants state the Warden reviews the daily conduct violations, and based on those reports, believes staff are attempting to enforce the rules. Whether good faith attempts are being made to strictly enforce the rule, both sides acknowledge there are inmates who smoke inside their cells.

To support their motion, defendants allege the air handling systems in the housing units adequately move the air, with a 100 percent exhaust rate for each cell. Thus, they state there are not unreasonable levels of tobacco smoke in the cells. Plaintiff disagrees, and contends the air handling system is inadequate and actually helps to bring smoke in from other cells. He has submitted affidavits from other inmates to support that position.

2

Plaintiff states he has had serious medical problems caused by his exposure to secondhand tobacco smoke and from scents used in the cells. He has submitted medical evidence from 1997 indicating a physician recommended that he be assigned a nonsmoking cell mate. The actual medical record asked someone to notify custody staff (1) that plaintiff is asthmatic and could have an exacerbation in a smoke-filled cell, and (2) that asthma attacks are the number one cause of sudden medical deaths in United States prisons. (Doc. 70, Exhibits.)

Defendants assert plaintiff cannot meet the standards for injunctive relief or damages under Helling v. McKinney, 509 U.S. 25 (1993), and Larson v Kempker, 414 F.3d 936 (8th Cir. 2005). They also seek judgment based on qualified immunity for plaintiff's claim for damages.

Entitlement to qualified immunity is a question of law to be determined by the trial court. McIntosh v. Arkansas Republican Party, 856 F.2d 1185, 1186 (8th Cir. 1988); Warren v. City of Lincoln, 816 F.2d 1254 (8th Cir. 1987). Government employees are protected from suit by qualified immunity unless their conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Court set forth a two-part analysis to be used when determining whether defendants are entitled to qualified immunity. The threshold question is "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. at 201. The next step is to ask "whether the right was clearly established . . . in light of the specific context of the case." Id. at 201. The Court goes on to explain that "[t]he question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208.

Defendants state they have a no-smoking policy for indoor areas, although it may be imperfectly enforced; plaintiff is receiving medications that work; and the annoyances he complains of are minor and not constitutionally actionable. Thus, they conclude they are entitled to qualified immunity because they are not violating any clearly established law.

In this case, the court disagrees. Plaintiff has a serious medical condition that is made worse by exposure to tobacco smoke. He has been periodically housed with smokers, and states he has required additional or stronger medication because of the exposure to smoke. He has been

3

very vocal and made defendants aware of his concerns. If defendants have been deliberately indifferent to plaintiff's needs, which appear to be different from the needs of other inmates who do not have asthma, then plaintiff has alleged the violation of a constitutional right. In light of evolving contemporary standards, a reasonable jury could find that placing plaintiff in an environment that is unreasonably unsafe for plaintiff may not be overcome by providing him with medication. That is particularly so if the medication does not prevent attacks, but merely treats them after they have occurred. And on this point, there are factual disputes. The record does not demonstrate how plaintiff's medications are working and the parties appear to disagree whether the condition is controlled or treated.

The second question in the qualified immunity analysis is whether a reasonable officer would know that his conduct was unlawful. A reasonable officer would understand that he must provide plaintiff with an environment safe for someone with asthma as well as to provide constitutionally adequate medical care.

For the substantive portion of their motion, defendants assert plaintiff cannot show he is being exposed to unreasonable levels of ETS because he lacks the scientific testing and medical experts to satisfy his burden. They claim plaintiff admits his medications are working and his complaints are of minor health annoyances. Defendants state they have evidence of more than adequate ventilation and a no-smoking policy which is being enforced.

In <u>Helling v. McKinney</u>, 509 U.S. at 35, the Court held that the plaintiff had stated a claim for which relief could be granted for unwilling exposure to ETS that poses an unreasonable risk of serious damage to his future health. They noted he would have to prove both the subjective and objective elements of an Eighth Amendment violation

Objectively, plaintiff must show that he was personally exposed to unreasonably high levels of ETS. That "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which

4

he complains is not one that today's society chooses to tolerate." Id. at 36. Evolving standards tend to suggest that local society is less tolerant of exposure to tobacco smoke than in years past.

Subjectively, plaintiff must show that defendants knew of the unreasonable risk and deliberately disregarded it.

Citing Helling v. McKinney and Larson v. Kempker, defendants assert plaintiff does not have expert testimony, based upon scientific testing or other reliable method, to put forth evidence of the amount of ETS he was exposed to and the likelihood of that risk causing serious medical problems. It is true plaintiff has not come forward with admissible expert testimony related to the amount of ETS exposure in his cell.

Unlike the plaintiffs in Helling v. McKinney and Larson v. Kempker, however, Washington has been diagnosed with asthma and has some medical evidence tending to suggest his condition has been exacerbated by exposure to ETS. There is even a possible inference that any exposure to a smoke-filled cell could be unreasonably dangerous for him. Thus, he may have already suffered an injury caused by his exposure to the smoke, regardless of whether he is currently at risk for future injury. The submitted evidence leaves genuine issues of material fact regarding his past exposure and past medical condition.[2]

As for the possibility of future injury caused by exposure to ETS, expert testimony would be required for plaintiff to prove his claims. He is indigent and has not had funds available for medical experts or the ability to obtain scientific testing of his cell. Because there are genuine issues of material fact related to his past exposure and medical condition, the court recommends that summary judgment be denied and that counsel be appointed. Counsel could then determine what medical evidence is needed or what scientific testing should be obtained, and could request the reopening of discovery for very limited and specified purposes.

In making this recommendation, the court is not reaching the merits of the issues, but is merely concluding there are genuine issues of material fact and that additional discovery may be required.

---

[2]Plaintiff is advised that the relevant medical condition and possible injuries must fall within the period of time not barred by the statute of limitations.

5

In October 2008, plaintiff also requested a preliminary injunction related to his exposure to ETS. The latest documents indicate plaintiff is not currently housed with a smoker, there is a no-smoking policy in place, and plaintiff's treating doctors have not specifically prescribed that he be confined in an area where there is no ETS. If plaintiff has current medical evidence indicating that his treating doctors believe he is in present and unreasonable danger, plaintiff should provide the court with the appropriate medical evidence.

Although the federal courts have broad power to grant or deny equitable relief in a civil rights action, Holt v. Sarver, 442 F.2d 304 (8th Cir. 1971), a "large degree of discretion is vested in the trial court" in determining whether an injunction should issue. American Home Investment Co. v. Bedel, 525 F.2d 1022, 1023 (8th Cir. 1975), cited with approval in Rittmiller v. Blex Oil, Inc., 624 F.2d 857 (8th Cir. 1980). See also Cole v. Benson, 760 F.2d 226 (8th Cir. 1985), cert. denied, 474 U.S. 921 (1985). In Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109 (8th Cir. 1981), the court delineated the factors to be considered in ruling a motion for preliminary injunctive relief.

> Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the plaintiff; (2) the state of balance between such harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that plaintiff will succeed on the merits; and (4) the public interest.

Id. at 113. Further, "[t]he dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently-existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury, or a future invasion of rights." Rogers v. Scurr, 676 F.2d 1211, 1214 (8th Cir. 1981) (quoting Holiday Inns of America, Inc. v. B. & B. Corp., 409 F.2d 614, 618 (3d Cir. 1969)). Thus, the inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113. The burden of proof is on the party seeking injunctive relief. United States v. Dorgan, 522 F.2d 969, 973 (8th Cir. 1975).

The record indicates plaintiff is not currently housed with a smoking cell mate.

Accordingly, it is

RECOMMENDED that plaintiff's motion of October 9, 2008, for a preliminary injunction be denied. [40] It is further

RECOMMENDED that the parties' motions for summary judgment be denied, that counsel be appointed and that counsel be given a period of time to determine whether discovery should be reopened for very limited purposes. [63, 70]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances. Failure to make specific written exceptions to this report and recommendation will result in a waiver of the right to appeal. See L.R. 74.1(a)(2).

Dated this 6th day of May, 2009, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge